UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Criminal No. 3:12cr141 (JBA) |
|---|---|
| v. | |
| WILLIAM PATRICK | July 30, 2020 |

**RULING DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant William Patrick "requests that the Court reduce his sentence to time served and order his immediate release from the custody of the Bureau of Prisons." (Emerg. Mot. for Compassionate Release [Doc. # 82] at 1.) The Government opposes. ([Doc. # 87].) For the reasons that follow, Defendant's motion is denied.

## I. Background

Defendant William Patrick was convicted by guilty plea of one count of using an interstate facility to persuade a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and on December 3, 2012, he was sentenced to 180 months of imprisonment, followed by five years of supervised release. (Judgment [Doc. # 74].) He is currently incarcerated at FCI Danbury and is scheduled to be released from Bureau of Prisons ("BOP") custody on November 4, 2025.

As part of his plea agreement with the Government, Defendant stipulated to the following offense conduct. (Plea Agreement [Doc. # 52] at 10-11.) Briefly, a search of Defendant's residence and electronics revealed "numerous images and videos depicting child pornography," and Defendant admitted at the time of the search that "he had been downloading such images for approximately three years" and that "most of his downloads were of child pornography." (*Id.* at 10.) The search revealed evidence that Defendant had "communicated with individuals in the Phillippines [sic] for the purposes of arranging Internet sex shows involving minors," including "ask[ing] for shows to be conducted with children, some as young as seven years old." (*Id.*) "For example, on October 6, 2008, the

defendant sent an email via the Internet to an individual in the Philippines offering money for a sex show involving multiple individuals and [a] seven year old girl." (*Id.* at 10-11.) In that email, Defendant "provided explicit instructions to the adult and the minors about the nature and duration of the sex acts he wanted to view and offered them cash rewards if they could perform certain acts on the seven year-old child." (*Id.* at 11.) Similarly, on December 7, 2008, Defendant communicated by Internet "chat session" with "a young child" who told him "that she was nine years old and in the fourth grade." (*Id.*) Defendant "asked that the girl engage in sexual acts and be photographed while nude," "asked the girl if she was ready to have sex with the adult and if she (the 9 year old) would be his girlfriend if" Defendant "came to the Philippines." (*Id.*) Defendant told the nine year old girl that he "wanted to have sex with her and can not wait to see her nude." (*Id.*) He also "provided $100 to an individual in the Philippines to facilitate his request." Later that month, Defendant "received pornographic photographs of the child." (*Id.*) On "other occasions in the fall of 2008," Defendant also "recorded a number of sexual encounters between other minors that occurred over a live streaming Web cam." (*Id.*)

Defendant also provided a statement "to the FBI about an incident occurring while [he] was a graduate student." (Presentence Investigation Report [Doc. # 63] ¶ 16.) The statement describes an incident wherein Defendant, while he "was a grad student at MIT," "took off [his] pajama bottoms and exposed [himself] to" the four-year-old daughter of his roommate. (*Id.*) Defendant asked the child if she "wanted to touch" his penis, but she declined. (*Id.*) Defendant encouraged the child to "pull[] up her dress and expose[] her genitals to" him, and he "then proceeded to touch her genitals and insert[ his] finger into her vagina." (*Id.*) Defendant "decided [he] didn't want to do any more of this," and the encounter eventually ended. (*Id.*) Defendant's statement also acknowledged that "[a]t some point while [he] was attending school in Boston, [he] had purchased and viewed child pornography." (*Id.*)

Defendant is currently 76 years old and has certain "documented medical conditions, including skin cancer, diabetes, high blood pressure, hypertension, irritable bowel syndrome, Hyperlipidemia, Bipolar Disorder, Depression Disorder, [and] Anxiety Disorder."[1] (Def.'s Mem. Supp. Mot. for Compassionate Release [Doc. # 83] at 1.) Defendant reports "that he has already tested positive for the novel coronavirus . . . on March 31, 2020" and was "the first FCI Danbury inmate to test positive." (*Id.* at 1, 14.)

The Court assumes the parties' familiarity with the ongoing COVID-19 pandemic and its spread from person-to-person, especially between those who are in close contact with one another. HOW COVID-19 SPREADS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed July 23, 2020).

The Centers for Disease Control and Prevention ("CDC") represents that "[p]eople of any age with the following conditions are at increased risk of severe illness from COVID-19: Cancer[,] Chronic kidney disease[,] COPD (chronic obstructive pulmonary disease)[,] Immunocompromised state (weakened immune system) from solid organ transplant[,] Obesity (body mass index [BMI] of 30 or higher)[,] Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies[,] Sickle cell disease[, and] Type 2 diabetes mellitus." PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 23, 2020). The CDC also warns that "[b]ased on what we know at this time, people with the following conditions

---

[1] Defendant moves to seal his medical records attached as Exhibit A to the Memorandum in Support of his Emergency Motion for Compassionate Release. (Mot. to Seal [Doc. # 84].) No opposition has been filed. The Court finds that Defendant's privacy interests in the private medical information contained in Exhibit A outweigh the public's right of access to that document, and thus Defendant's Motion to Seal is granted.

might be at an increased risk for severe illness from COVID-19: Asthma (moderate-to-severe)[,] Cerebrovascular disease (affects blood vessels and blood supply to the brain)[,] Cystic fibrosis[,] Hypertension or high blood pressure[,] Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines[,] Neurologic conditions, such as dementia[,] Liver disease[,] Pregnancy[,] Pulmonary fibrosis (having damaged or scarred lung tissues)[,] Smoking[,] Thalassemia (a type of blood disorder)[, and] Type 1 diabetes mellitus." *Id.* Moreover, "[a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." OLDER ADULTS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed July 23, 2020).

FCI Danbury has had 89 inmates test positive for COVID-19, but no inmates and only one staff member currently have "[c]onfirmed [a]ctive [c]ases" of COVID-19. COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed July 23, 2020).

## II. Discussion

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release upon motion of the BOP, the First Step Act of 2018 amended that provision to permit prisoners to seek relief directly from the courts upon satisfaction of certain exhaustion requirements.[2]

Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to that Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Defendant argues that extraordinary and compelling reasons exist which justify his requested sentence reduction. Specifically, Defendant argues that "his myriad physical health concerns and mental health issues" "place him at extremely high risk for severe illness or death should he contract COVID-19 again." (Def.'s Mem. at 19-20.) Defendant asserts that

---

[2] Defendant reports that he submitted a request for compassionate release to the warden of FCI Danbury on April 29, 2020 and that he recalls receiving "a denial letter from the warden on our about May 15. 2020." (Def.'s Mem. at 3.) The Government makes no argument that Defendant has failed to satisfy the exhaustion requirement. (*See* Gov't Opp. [Doc. # 87] at 5.)

although he "already had the virus," that "does not mean he is immune from contracting it again," (*id.* at 20), though he offers no medical or scientific support for that conclusion.

The Government "acknowledges the dangers of COVID-19," "agrees that Patrick suffers from age onset diabetes and other illnesses," and recognizes that "[t]his Court has held that suffering from a serious medical condition such as diabetes constitutes extraordinary and compelling reasons warranting compassionate release to home confinement under the current pandemic." (Gov't Opp. at 7.) The Government appears not to contest that Defendant's age and medical conditions offer compelling support for his request for compassionate release, and the Court agrees, especially in the absence of any medical certainty regarding immunity among those who have previously contracted COVID-19.

But the inquiry does not end there. Rather, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether Defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; *see* 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."

Defendant argues that the time he "has already served is sufficient to satisfy the purposes of sentencing" under § 3553(a) because "[t]he purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." (Def.'s Mem. at 24.) Defendant also argues that the § 3553(a) factors support his requested sentence reduction because of "his (1) strong family ties; (2) excellent employment history; (3) extraordinary civic contributions; (4) rehabilitative efforts prior to and during his imprisonment; (5) medical ailments; and (7) age and unlikelihood of recidivism if properly treated." (*Id.*) Defendant states that he "never forgot the harm he caused the victims, and their families," and thus "completed a victim impact course, which only served to remind him of his commitment to helping the minor victims." (*Id.* at 25.)

6

Defendant cites an evaluation by Dr. Leslie Lothstein, "an expert in forensic psychology and human sexuality, [who] treated Mr. Patrick for three years prior to sentencing," which was attached to Defendant's sentencing memorandum. (*See id.*) Dr. Lothstein wrote that Defendant "attended 148 sex offender group therapy sessions, each session lasting 1.5 hours for a total of 222 hours of group therapy" and "was an active participant in the group and changed a great deal as a result of his effortful participation in his treatment." (*Id.* (quoting Ex. O (Dr. Lothstein Eval.) to Def.'s Sentencing Memo. [Doc. # 68]).) "Essentially, he moved from someone who was in denial and minimized and rationalized his crime to someone who was an outspoken advocate for his victims." (*Id.*) Dr. Lothsten wrote that he was "impressed by Mr. Patrick's genuineness and concern for the children he hurt and how much he learned in his treatment." (*Id.*)

Defendant also argues that his "strong relationship with his family," including his brother and his former spouse for whom he previously served as a caretaker, his "distinguished career,"[3] and his "community activism" all support his request for release. (*Id.* at 25-26.)

The Government responds that Defendant "is a danger to the community" in light of his "long history of interest in child pornography" and prior history of "sexual[] abuse[] of children." (Gov't Opp. at 8.) The Government argues that Defendant has a "continued inability to understand the horror of his crimes," noting that he "apparently has not engaged in therapy for his crimes against children since being incarcerated." (*Id.* at 9.) The Government also points to the April 2020 letter from Defendant to the warden of FCI Danbury requesting compassionate release. (*Id.*) In that letter, Defendant describes his offense conduct as "an attempt to entice a minor in a sexual performance (which never happened)" and states that

---

[3] Defendant "obtained his Masters and Doctorate degrees in Aeronautics and Astronautics" from Massachusetts Institute of Technology and "enjoyed a distinguished career as a Principal Research Engineer with United Technologies Research Center" for "34 years." (Def.'s Mem. at 26.)

his "crime had no victims and required no restitution, because no sexual act occurred." (Ex. C (Letter to Warden) to Def.'s Mot. for Compassionate Release [Doc. # 83-2] at 2.) Defendant further asserted that he was "scammed by some adults in the Philippines who said they would do a sex show with an unidentified minor if I sent them $50," and although he "did send the $50[,] . . . they had never planned to do such a show."[4] (*Id.* at 9.) The Government concludes that Defendant "will be a danger to the community if released" because he is "technologically sophisticated" in light of his education and employment and "has a lifelong interest in sex with children." (*Id.*)

Defendant explains his lack of ongoing treatment by noting that "there are no sex offender treatment programs at either of the two Bureau of Prisons facilities in which Mr. Patrick has been housed." (Def.'s Reply [Doc. # 88] at 1.) He explains the comments in his letter to the warden by noting that "the government clearly explained in its 2012 supplemental sentencing memorandum, 'In sum, no video evidence of sex shows involving children was recovered . . . .'" (Def.'s Reply at 1-2.) Defendant also notes that he has paid his fine at a rate which "far exceed[s] Judge Eginton's order that he pay $500 per year during his incarceration," paying "$14,515.08 of his $20,000 fine" thus far. (*Id.* at 2.)

The Court notes the rehabilitative efforts described in Dr. Lothstein's evaluation, as well as Defendant's family relationships and work history. But those characteristics were known to the Court at the time sentence was imposed upon Defendant, and the Court sees no reason why they should now serve to justify a reduced sentence. Moreover, the Court harbors significant concerns about the potential danger Defendant poses to the community, in light of his apparently decades-long sexual interest in minors and his occasional

---

[4] The Court acknowledges that in that same letter, Defendant admitted that he "did intend to have the adults entice a minor to do the show" and that he is "extremely embarrassed, ashamed, and sorry for the reprehensible behavior that led to [his] incarceration," describing that behavior as "unjustifiable." (April 2020 Letter at 6-7.) Nonetheless, Defendant maintained that his crime had "no victims." (*Id.* at 7.)

unwillingness to acknowledge the victims of his crimes. (*See* Gov't Opp. at 8.) Defendant cites his "age and unlikelihood of recidivism if properly treated," but the Court has not been provided with any authority that Defendant's age presents a barrier to future crimes, especially in light of his technological skill and the electronic nature of his offense conduct. Nor does the Court see sufficient evidence in the record to support the asserted "unlikelihood of recidivism if properly treated." Thus, although the Court recognizes the compelling nature of Defendant's current medical risk, the Court concludes that a reduction of Defendant's sentence is not warranted in light of the continued risk of danger to the community he poses. *See* 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a).

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release [Doc. # 82] is DENIED. Defendant's Motion to Seal [Doc. # 84] is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of July 2020.