UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>WILLIAM PAUL PATRICK | Criminal No. 3:12cr141 (JBA)<br><br>July 18, 2022 |

**RULING GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

On July 30, 2020, the Court denied Defendant William Patrick's motion for compassionate release because he posed a risk of danger to his community. (Ruling Denying Def.'s Mot. for Compassionate Release ("Ruling") [Doc. # 89] at 9.) Mr. Patrick now renews his motion, arguing that the Court is not required to make a determination on his dangerousness and that a combination of factors, including his medical conditions and need to care for his ailing former spouse, constitute extraordinary and compelling circumstances warranting his release to home confinement. (Mem. in Supp. of Reconsideration of Mot. for Compassionate Release ("Def.'s Renewed Mem.") [Doc. # 90] at 1; Reply Mem. in Further Supp. of Renewed Mot. ("Def.'s Reply") [Doc. # 102] at 1-5.) The Government opposes. (Gov't's Mem. in Opp'n ("Gov't's Opp'n") [Doc. # 96].) A hearing was held on June 3, 2022. (Min. Entry [Doc. # 103].) For the reasons that follow, Mr. Patrick's motion is GRANTED.

**I.    Background**

Mr. Patrick was convicted by guilty plea of one count of using an interstate facility to persuade a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (J. [Doc. # 74].) On December 3, 2012, he was sentenced to 180 months of imprisonment, followed by five years of supervised release. (*Id.*) He is currently incarcerated at FCI Danbury and has served over 112 months of his sentence. (Def.'s Reply at 12.) Mr. Patrick is scheduled to be released from Bureau of Prisons ("BOP") custody on November 4, 2025. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last accessed July 11, 2022).

Mr. Patrick is now seventy-seven years old with a variety of health concerns. He has skin cancer, diabetes, hypertension, irritable bowel syndrome, hyperlipidemia, impotence, bipolar disorder, major depression disorder, and anxiety disorder. (Def.'s Renewed Mem. at 17; Def.'s Reply at 8.) He has incontinence, and "go[es] through several pairs of [adult diapers] every day." (*Id.* at 16.) He suffers from "debilitating" hip pain and was recently diagnosed with osteoarthritis. (Update Regarding Def.'s Renewed Mot. for Compassionate Release ("Def.'s Update") [Doc. # 97] at 1; Def.'s Reply at 9.) Despite taking two Tylenol or ibuprofen pills every four hours for the pain, he has trouble walking. (Def.'s Update at 1; Def.'s Reply at 9.) The pain prevents him from going to the prison dining room and he needs other prisoners to bring him food. (*Id.*; Def.'s Reply at 9.) On days that someone is unable to retrieve his meals, he goes without eating. (*Id.*; Def.'s Reply at 9.) Mr. Patrick has requested a wheelchair from the BOP and, although his request has been accepted, (*see* Def.'s Update at 1), he had not been provided with a wheelchair as of June 3, 2022, (Def.'s Reply at 9).

At the hearing, Mr. Patrick described that he has been subject to a twenty-three-hour-a-day lockdown. Because of his health conditions and limited mobility, Mr. Patrick cannot reach the recreation facility to take advantage of the one-hour a day of recreation. Further, he cannot carry out the exercises he needs to combat his incontinence because the physical therapy room, which contains his necessary exercise equipment, was closed for the pandemic. (Def.'s Reply at 9.)

While imprisoned, Mr. Patrick has not received any disciplinary tickets. (Def.'s Renewed Mem. at 1.) Because FCI Danbury does not offer any sex offender treatment or programming, Mr. Patrick has undertaken self-study on "sex offenders, victims, and treatment modalities." (*Id.* at 6.) He has also remained in contact with his former counselor, Dr. Leslie Lohthstein, and plans to continue group sex offender treatment after his release from incarceration. (*Id.* at 4.)

If released to home confinement, Mr. Patrick will live with his former spouse, Roseanne Patrick. (*Id.* at 10.) Although divorced, the two remain close friends. (*Id.*) Ms. Patrick is seventy-six years old and suffers from chronic illnesses, including chronic obstructive pulmonary disease and emphysema. (*Id.*) At the hearing, Ms. Patrick detailed how she lives alone and has no friends or family members in Connecticut to call on for assistance. While she can drive, she struggles with many daily tasks. (*Id.*)

## II. Discussion

### A. Legal Standard

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides that:

> the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could seek compassionate release only from the BOP, the First Step Act of 2018 permits federal prisoners to seek relief from the federal courts upon exhaustion of their administrative rights.[1] *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). A district court's discretion to grant compassionate release motions is extensive, but a court cannot find extraordinary and compelling circumstances based on "rehabilitation *alone.*" *Brooker*, 976 F.3d at 237-38.

---

[1] Mr. Patrick represents that he has exhausted his administrative remedies, and the Government agrees with that representation. (Gov't's Opp'n at 2.)

### B. Extraordinary and Compelling Reasons

Mr. Patrick argues that a combination of factors, including his age, vulnerability to COVID-19,[2] need to care for his seventy-six-year-old ex-wife, "extraordinary" rehabilitation, and the unanticipated harshness of his confinement during the COVID-19 pandemic constitute extraordinary and compelling reasons warranting a sentence reduction. (Def.'s Reply at 3.) The Government contends that because Mr. Patrick is vaccinated and has recovered from COVID-19, the pandemic cannot support a finding of extraordinary and compelling circumstances. (Gov't's Opp'n at 6.) Further, it asserts that there is no basis to release Mr. Patrick to care for his former spouse when she has adult children, can live on her own, and is able to drive. (*Id.*)

The Sentencing Commission considers the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" an extraordinary and compelling circumstance warranting release. U.S.S.G. § 1B1.13. While Ms. Patrick, Mr. Patrick's former spouse, does not squarely fit the § 1B1.13 criteria, the Sentencing Guidelines do not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Brooker*, 976 F.3d at 236. Indeed, district courts have found an incarcerated person's need to care for a family member beyond a spouse or registered partner to be extraordinary and compelling. *See, e.g.*, *United States v. Rodriguez*, No. 3:07-cr-00146, 2022 WL 1043670, at *2 (D. Conn. Apr. 6, 2022) ("[T]he court also considers [the movant's] need to help care for his mother as a compelling circumstance."); *United States v. Vargas*, 502 F. Supp. 3d 820, 828-29 (S.D.N.Y. 2020) ("Freed from the unyielding constraints of the Sentencing Commission's guidance, the Court credits [the movant's] wish to assist in the care of his sick mother in its assessment of extraordinary and compelling reasons.").

---

[2] FCI Danbury has modified its operations to combat the COVID-19 pandemic. *See FCI Danbury*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/dan/ (last accessed July 11, 2022).

Ms. Patrick's limited mobility and chronic health conditions leave her struggling to complete daily tasks. (Def.'s Renewed Mem. at 10.) It is difficult for her to cook, clean, and care for her dog. (*Id.*) At the hearing, Ms. Patrick explained that she is without any support. She has two adult children who live outside of Connecticut and are unable to care for her. (*See id.*) Ms. Patrick's siblings have either died or are too elderly to provide her assistance. She has no girlfriends, her work friends have moved to Florida, and her only emergency contact is a former neighbor. Her isolation has also caused her to experience extreme depression. (*Id.*)

Even if Ms. Patrick needs care, the Government contends that a former spouse "stands in a different relationship" than a current spouse or an ill parent. (Gov't's Opp'n at 6.) Although Ms. Patrick may not be a current spouse or a parent, the two have promised to care for each other into their old age. Ms. Patrick acts as Mr. Patrick's power of attorney, pays Mr. Patrick's bills, and finds Mr. Patrick books to aid in his rehabilitation. Mr. Patrick expressed that he and Ms. Patrick "take care of each other" and "lean on each other" to come out for the better. It certainly seems that Mr. and Ms. Patrick's relationship shares the essence of kinship. *See* Marshall Sahlins, *What Kinship is—and is Not* 62 (2011) ("[K]infolk are members of one another, intrinsic to each other's identity and existence.").

The Court finds that Ms. Patrick is in need of care and Mr. Patrick, her former spouse and acting family member, would be her only available caregiver. Ms. Patrick's need for Mr. Patrick's support weighs towards a finding of extraordinary and compelling circumstances. *See United States v. Wooten*, No. 3:13cr18, 2020 WL 6119321, at *7 (D. Conn. Oct. 16, 2020) ("[E]xtraordinary and compelling reasons can exist when an inmate is the only available caregiver for a close family member other than a spouse or registered partner.").

Mr. Patrick next argues that the conditions of his confinement have been unanticipatedly harsh. (Def.'s Reply at 3.) "Courts have granted motions for compassionate release based upon the theory that the COVID-19 pandemic has created disproportionately

5

harsh sentences and limited the rehabilitative resources available to incarcerated people." *United States v. Dones*, No. 3:18cr246, 2021 WL 6063238, at *3 (D. Conn. Dec. 22, 2021) (collecting cases). Mr. Patrick detailed how FCI Danbury's lockdown has been particularly onerous for him because of his limited mobility. He cannot avail himself of the one-hour-a-day of recreation. Nor can he perform exercises which would diminish his dependency on diapers. Doubtless, these conditions have "exacted a price" on Mr. Patrick far "beyond that imposed by an ordinary day in prison," *see United States v. Mcrae*, 17 Cr. 643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021), and add weight to a finding of extraordinary and compelling circumstances.

Finally, courts have granted compassionate release motions to elderly persons with a combination of health conditions. *See United States v. Hansen*, No. 07-cr-00520, 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020) (collecting cases and granting compassionate release to a seventy-two-year-old individual with type II diabetes, heart disease, glaucoma, and limited mobility). Mr. Patrick's medical records reflect an individual "besieged with mounting, serious afflictions," *see id.*, which are worsening with age. Further, the BOP has an inability to care for Mr. Patrick.[3] He has trouble moving throughout his facility and has become dependent on other incarcerated persons to bring him meals. And despite Mr. Patrick's requests for a wheelchair, he has not been provided with one. Mr. Patrick's age and health conditions, and the BOP's limited ability to care for him, also lend weight to a finding of extraordinary and compelling circumstances.

Considering the combination of factors in Mr. Patrick's case—his need to support his ailing former spouse, the conditions of his confinement, and his age and medical

---

[3] Mr. Patrick cites to a 2015 report by the Office of the Inspector General, concluding that BOP institutions "lack appropriate staffing levels to address the needs of an aging inmate population," including assistance moving throughout an institution and prompt medical care. Office Inspector General, *The Impact of an Aging Inmate Population on the Fed. Bureau of Prisons* ("OIG Report") (revised Feb. 2016), *available at* https://oig.justice.gov/reports/2015/e1505.pdf.

6

conditions—the Court finds that Mr. Patrick has demonstrated extraordinary and compelling circumstances warranting a sentence reduction. *See United States v. Suggs*, No. 3:99cr244, 2021 WL 2661874, at *7 (D. Conn. June 28, 2021) (concluding that the aggregation of several factors amounted to a finding of extraordinary and compelling circumstances).

### C. Section 3553(a) Factors

Although Mr. Patrick has presented extraordinary and compelling circumstances, the Court must still consider whether the § 3553(a) factors warrant the release he seeks. Mr. Patrick asserts that the § 3553(a) factors support his release because he has an unblemished disciplinary record, has served the majority of his sentence, and poses no risk to his community. (Def.'s Renewed Mem. at 18.) The Government maintains that Mr. Patrick poses a danger to his community and needs to serve the remainder of his sentence as "just punishment" for his offense. (Gov't's Opp'n at 7-8.)

Under § 3553(a), the Court seeks to impose a sentence that is "sufficient, but not greater than necessary" to

> reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The Court denied Mr. Patrick's first motion for compassionate release because he posed a danger to the community "in light of his apparently decades-long sexual interest in minors and his occasional unwillingness to acknowledge the victims of his crimes." (Ruling at 8-9.) "Although a court . . . is no longer required to consider whether a defendant would pose a 'danger to the community' as described by § 1B1.13, it is still required by § 3553(a) to 'consider . . . the need to protect the public from further crimes of the defendant.'" *United*

7

*States v. Allgood*, No. 3:19-CR-64, 2021 WL 5867724, at *7 (D. Conn. Dec. 9, 2021) (citing *Vargas*, 502 F. Supp. 3d at 823).

Having considered the § 3553(a) factors, the Court concludes that Mr. Patrick's release to home confinement is appropriate. Indeed, Mr. Patrick has maintained a clean disciplinary record while at FCI Danbury and has served the majority of his sentence. Further, Mr. Patrick described to the Court his self-study on addiction and his new understanding of the harm he has caused. He noted that he no longer feels any type of sexual compulsion towards children and, should any compulsions arise, he has learned tools to keep himself from acting upon them. He also cites to a report by the Office of the Inspector General, showing that aging individuals—or those over fifty—have a low rate of re-arrest and recidivism once released from prison. (OIG Report at 37-38.)[4] Mr. Patrick also offers to forgo the use of any technology for the period of his home confinement. (Def.'s Renewed Mem. at 18.) The Court is persuaded that the public now will be adequately protected given Mr. Patrick's physical impairments, rehabilitation, and willingness to forgo all uses of technology.

The Government argues that Mr. Patrick should serve the remainder of his sentence in prison to provide "just punishment" for his offense. *See* 18 U.S.C. § 3553(a). The Court is unpersuaded, despite the grave seriousness of Mr. Patrick's child sex offense. Mr. Patrick's last twenty-seven months of imprisonment, exacerbated by his immobility amidst strict lockdowns, have exacted a punishment on Mr. Patrick that is more severe than what was contemplated during sentencing. *See Dones*, 2021 WL 6063238, at *5. This harshness of imprisonment has provided a sufficient form of "just punishment."

---

[4] Of the 381 aging individuals studied, only 15% were re-arrested for new crimes within three years of release. (OIG Report at 39.) No individual over the age of seventy was re-arrested for a new crime. (*Id.* at 40.) Additionally, aging individuals "who were re-arrested were most commonly charged with drug offenses (41 percent), followed by violent offenses (17 percent) and immigration offenses (16 percent)." (*Id.*) Only 2% of aging persons were re-arrested for sex offenses. (*Id.*)

Therefore, the Court modifies Mr. Patrick's term of imprisonment and grants his immediate release from prison to supervised release. The first year of his five-year supervised release term will be on home detention and Mr. Patrick is not to use a computer, Internet-capable device, or similar electronic device. The remaining supervision conditions are unchanged.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release [Doc. # 90] is GRANTED and he shall be released to supervision.

                            IT IS SO ORDERED.

                            _____/s/_____
                            Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of July 2022.